case number 25-3863 and we'll hear from Mr. Arnold again. Thank you, Your Honor. Again, may it please the court, Nathan J. Arnold on behalf of the Colombo plaintiffs. This, too, is a Rule 12 pleadings case. Our position is that this was dismissed too early. This case was dismissed without leave to amend. We take issue with that from the lower court. We believe we should have been allowed to amend. So let me just say, so this one has a new issue that we haven't talked about, sovereign immunity. And I guess you're claiming that they waived that by not arguing that they were an arm of the state below. Am I am I on the right case? I'm not sure that I think it may be. Although I would like that position, Judge, I don't think I could agree that the other side waived that issue below. OK. It's hard to tell these cases apart. Yeah, I know I might have been jumping. And even though we got lots of you're right, I'm jumping ahead to Nielsen. That is the argument. And I wish that was the case, Your Honor. But OK. All right. So so here, the only question we need to decide on sovereign immunity is whether they whether the Washington Department of Natural Resources is an agent of the state. I think it's a narrower question than that, Judge, because we are at a Rule 12 standard. I'm not sure that we need to determine that the court needs to resolve that legal question on Rule 12, where it is a fact intensive inquiry, particularly after the recent Gillette case from the United States Supreme Court. But Gillette seems to. I think counsel against in favor of sovereign immunity, why does Gillette go the other way on this one? I believe the most critical I don't believe that Gillette expanded sovereign immunity. I think Gillette more fundamentally reordered the cone factors. Yeah. Gillette, by my reading, Your Honor, is that the. Independence of the agency, followed by the impacts on the state treasury are really the top factors to be considered as opposed to the previous contest. And for example, what the what the agency is called or labeled no longer has the. Yeah, but I mean, wouldn't we say the Department of Natural Resources is a is a is a government instrumentality, a state law government instrumentality? I don't really understand your argument for no sovereign immunity. Is it just because you think that judgments against the Department of Natural Resources aren't covered by the state? Was that the argument here? So on this record at Rule 12, where the appellees would bear that burden, I think the record is just not is absent on whether or not the treasury. I thought we had cases that I thought there were multiple state cases that said the Washington Department of Natural Resources was a was an arm of the state. And I can see that point. Your Honor, there are, in fact, state cases that that do say that I believe federal law would control here. And I would point to the federal law look to that. I mean, is it federal law? I mean, I understand it's a federal question. But when you're asking about whether I mean, Cone says you look to state whether state law treats the entity as a government instrumentality. That seems like federal law incorporates those state law questions. Do you have any cases, any state law cases that go the other way? No, Your Honor, I do not. And I agree with you that certainly under the Cone factors, that is something that the court should consider. And I think it's a I think it is admittedly. I'm sorry to have drift between our arguments, but I think it is a. I don't think I have as strong of an argument on this point as I do with the university, but I just need to admit that to the problem with the application of the doctrine of sovereign immunity, much like qualified immunity, is that it can be raised at any point during the litigation. It is jurisdictional in the sense that if the state or one of its agencies is immune, then it's immune from having to go forward with the litigation. And if we can make that determination by looking at state law, the R.C.W. provisions and the decisions of the Washington state courts, what more needs to be done by the district court in terms of developing an adequate record to render the legal conclusion that sovereign immunity applies here? I don't disagree with your honor, and that is not the. I believe that we have plausibly alleged facts that the DNR is not an arm of the state. This is probably not your strongest issue. Is there something else you want to spend more time on? Certainly, your honor. So here, similarly to the last case we discussed, this is an as applied challenge. This is not a facial challenge. We believe that dismissal without leave to amend was error here. We are focusing on the same types of constitutional claims that is free exercise. Which has some significant overlap, of course, with equal protection and a failure to provide the process that was due to these individuals and why. So is there a reason you think strict scrutiny applies here that is different? I mean, obviously, the facts are different, so maybe you want to focus on that. But why do you think strict scrutiny should apply here or do you think you should be given leave? You weren't given leave to amend. That's correct, your honor. What could you say? What would entitle you to amend that might get you more towards strict scrutiny in this case? One thing I think that we could amend is to build out more facts that align with the Bacon decision. Specifically, for example, DNR operates its wildland firefighter, fire suppression rather, with other agencies that did not necessarily have as draconian or a policy that required vaccination. I do think as alleged, we do get to strict scrutiny for we don't have the same type of. You're talking about the pilots and the bulldozer operators and the tribal firefighters that the state sometimes has to call in in order to bolster the state wildland fire crews? In addition to federal resources, your honor, yes. So how would a state agency impose that requirement on a federal agency that it is calling on for mutual aid? So it's not about the state agency imposing its policy upon another agency, whether it's a neighboring state agency or a federal agency. And certainly, I would have a hard time finding that legal mechanism, your honor, particularly state to federal, of course. Yeah, right, yeah. But even state to state. I mean, if Washington calls on Idaho for crews to fight a wildland fire, it doesn't have the authority to prescribe for the Idaho Department of Lands the same thing it may be requiring its own employees in Washington, does it? That's correct. And that's actually part of the problem. So let's take as a hypothetical, if there's wildland fire in the eastern part of the state, and wildland firefighters working for DNR have been terminated over religious objection, there is now, if you look at it from an economics perspective, assuming the demand for fire services has remained constant or close to constant, but the supply has been diminished from DNR's own religiously objecting firefighters, it then gets filled with unvaccinated firefighters from Idaho. And you wouldn't find a compelling interest where one state has to ask a neighboring state for help because it doesn't have adequate resources to fight a fire? Oh, Your Honor, I don't think compelling interest is an issue in any of these cases. We do not argue that the state does not have a compelling interest to battle COVID or battle fires as well. But I get back to my earlier question about the inability of the DNR to impose its COVID vaccination rules under the Washington governor's proclamation on an agency that it calls in from another state to bolster its resources in order to put out a rapidly spreading wildland fire. I just don't see the constitutional violation here. The issue is that it results in an under-inclusiveness where the necessary result of terminating the religious objectors is other individuals coming in to fill that vacuum who are similarly unvaccinated. And we talk about comparator risk. How does the department know that at the time it makes its own decisions for itself? I mean, otherwise you're driving to the lowest common denominator. So the Washington department makes its decisions that it wants to accommodate those that it can't, but these positions can't be accommodated. The fire comes along. They don't necessarily know what other agencies have done with regard to vaccine mandate. What they know at that point is that they got this fire they have to deal with, but they don't know what the other states or other jurisdictions have done at the time that this department makes its decision at the outset. It may turn out developments suggested that maybe they didn't make the right decision in the first place, but I'm not sure how that becomes a constitutional violation unless you're willing to say, well, because another jurisdiction who someday we might have to call upon decides not to enforce the accommodation requirement in the same way that we have, we can't have any requirement at all. And that's a death spiral. So I'm having trouble again, trying to figure out what makes plausible the claim that what this department did was a constitutional violation. So it goes to under inclusiveness, your honor. And this is tracking with with the bacon versus Woodward case. And I would suggest that under war soldier and other ninth circuit precedent, what other jurisdictions that are similar situated did actually is a analysis that the government should be undertaking when it is setting in place policies that are going to potentially infringe upon protected rights, whatever those rights may be. This comes particular war soldier, for example, was a penitentiary case, as many of these are, where if this prison is able to if this prison claims that it cannot, for example, have prisoners that have any facial hair because of religious reason, but the prison down the road, so to speak, can that goes to show that there are less restrictive. And that makes a lot of sense in that context. The problem in this context, we're talking about uncharted territory. I mean, take yourself back six years and this state really experienced it because of what happened in, I guess, nursing homes. And and so nobody's quite sure how this is unfolding. And to say, well, this prison down the road is able to accommodate facial hair really doesn't help because we don't know. And the state of Washington did not know. And in this case, the Department of Natural Resources didn't know how this was going to unfold, how it was going to develop. And everybody's trying to make decisions. Now, if you're telling me Washington can't make a decision until it finds out what Idaho has decided, well, then Idaho can't make a decision until it figures out what Washington has decided. And neither of them can decide until the Forest Service speak. I mean, that's that's a recipe for disaster. That's I mean, qualified immunity is plainly at issue in this case. We're past that. We're trying to understand how it is that the department can be required to anticipate what other people are going to do at a time when nobody's quite certain what the future holds. And I have a trouble understanding how that's a constitutional violation for them to make a decision at a time when there was a lot of uncertainty. And I I fully agree with your honor that there's a lot of uncertainty this time. I remember Clorox wiping Amazon packages and not leaving my house for weeks at a time. So I thought living in Seattle at the time as well. So I understand that the issue here, though, is not we don't need a case that's factually on all fours for the qualified immunity analysis. What do you have that's close? I mean, the problem with your argument, your underinclusive, overinclusive argument is that it all deals with employees in the same agency. Do you have a case that says. We can consider the policies of the state of Idaho and their crews. Well, Bacon sort of does that, doesn't it? I mean, it's not a different state going to say your honor. And in the in the bacon case, that's exactly what what bacon does, in fact. In that case, be careful. I mean, it's a different county, not a different state. You're correct. Similarly, a neighboring agency over which the defendants in that case did not have the ability to enforce separate policy. So it is a different it's a it's a city to county relationship as opposed to a state to state relationship or a state to federal relationship. Correct, your honor. But I think the same logic applies where and at the risk of repeat myself, you look at it somewhat like an economics equation. If the demand for emergency services or any services, if it's social worker services, if the demand is going to remain constant or close to constant and you're going to eliminate some of the supply by terminating religious objectors, then it behooves the government to make sure that the individuals that are filling that gap, whether they're other agencies, other states, feds, contractors, vendors, whomever, that those individuals don't pose that same risk of undercutting the compelling government interest. You have the same numbers that Judge Clifton had in the Seagraves case with regard to the number of secular versus religious accommodations DNR was able to provide, if any. Your honor, I don't I didn't see any. I didn't find it. And I was looking at the attachments to the complaint. So I believe we have OFM data on that point. And I will I should have that at my fingertips. And I can't quickly, but I do see I'm well over my time. Well, we're going to make you work over time. We do have one particular question. And this time I have the numbers that I didn't have the last time the complaint was filed in October of 2024. The proclamation was rescinded by the governor. And this is a separate department, but it followed suit effective May 11, 2023. So basically a year and a half earlier. So a year and a half before this lawsuit was filed, the proclamation was rescinded. I don't know how in that context, the ex parte young opening for prospective injunctive relief can connect because at the time the litigation is filed, there is no constitutional violation. You're claiming there was a violation a couple of years before, but that's not the same thing, is it? Because it's not prospective anymore. Indeed, we've got a case, I think it's called Han that makes the distinction between you for complaining about something that happened in the past. You can't bring your lawsuit and describe it as prospective. It happened in the past and is the kind of thing that's going to happen again, which we God knows hope is the case for COVID. So I'm not sure to the extent that you're going to rely upon the ex parte young basis for pursuing prospective injunctive relief, how a year and a half gap permits you to do that. Your Honor, admittedly, that's not something that I had considered. I do think that under the Carvalho case did make clear that reinstatement is prospective injunctive relief even after the policy has been lifted. So I think we come under that ambit. I understand the distinction.  I'm sorry, Your Honor. A year and a half later. I mean, it's the dimension that I'm trying to call attention to. We're back to the continuing violation problem that we had in the earlier case. We've got the same problem here. At the time your lawsuit was filed, there was no continuing violation. The proclamation had been rescinded. So the and another important point, I think, on DNR, because I know it's I myself have mixing some drift between these cases, but it DNR, the commissioner of lands promulgated her own directive and mandate. Initially, former Governor Inslee's proclamation did not include DNR within its ambit. Later amendments did. But in this this case has some distinction of being under an agency specific policy. Did Commissioner Franz reference the governor's proclamation in her agency directive? I believe she did reference that it was in line with what was occurring elsewhere within the state. I mean, they are state employees, are they not? They are. Yeah. I mean, they're all paid out of the state treasury there. But the initial proclamation by then Governor Inslee did not include DNR. It was later amendments. And in between that time period, there was a separate policy that Washington has a funny, maybe not funny because other states do as well. But we elect a lot of as you know, we elect a lot of these commissioner and secretary positions that in other states the governor appoints. But that doesn't end our inquiry under Kahn or Gillette, as I read Gillette in determining whether or not their state agencies. I would agree with that, Your Honor. I certainly don't think that is the single dispositive element under either cone. I mean, the commissioner for public land is like the secretary of state. He or she runs for election every four years. Correct. Yeah. And so I would completely agree with your honor, that is not a single dispositive fact. It does show it does show lesser control by the executive branch of the state government, where that individual contrasted to, for example, Secretary Hunter is not appointed and removable by the governor. So I think that augers against sovereign immunity. But I completely agree with your honor, that's not a single dispositive fact on the issue. Okay, we'll we'll we'll give you a minute for a rebuttal again. Thank you, Judge. Good morning. Again, I'll reintroduce myself. Zach Picalus, Special Assistant Attorney General for Appalese. May it please the court. I'll begin just by following up on the various dates that we've had questions on. The filings are, of course, in the record, but just for the court's convenience, this case, Colombo, October 18th, 2024. The previous case, Seagraves, filed January 30th, 24. And the third case, Nielsen was filed September 26th, 23. All of those are after the date that the emergency proclamation was rescinded. October 31st, 2022. The governor also issued a directive that applied to state cabinet agencies post emergency. That was the date Judge Clifton referenced that was rescinded on May 11th, 2023. So all of these lawsuits were filed after all of the various Um, Mr. Arnold mentioned that the DNR vaccine mandate was imposed within the agency itself by the then Commissioner of Public Lands, Commissioner Franz. She followed suit and rescinded her directive the day after Governor Inslee. And I'm happy to put this all on a record in some kind of supplemental filing that refers to judicially noticeable documents, if it's convenient for the court. You've got it on the record and we have the documents. I don't think we're just busy getting confused amongst the different cases. So I appreciate your index. Then I'll only file something if for some reason I misspoke because I was consulting with my colleagues. Um, and you know, we were moving. We're certainly confused. You're entitled to be confused. This is an unusual context. Some of the confusion. There are few elements of this case that differ from the previous one. And so I think it's best to focus on those. So, as I They were covered by a separate DNR proclamation that also covered on-site contractors. Now, the plaintiffs have tried to kind of leverage that facial element of the directive and analogize this case to Bacon by suggesting with a kind of vague allegation at 2 ER 268, they alleged the plaintiffs performed for DNR were necessarily provided by contractors who did not have to enter DNR facilities because the directive applied. Are we now talking pilots, bulldozer operators, a hotshot cruise? Well, there aren't any specific allegations in the complaint. Indeed, in this complaint, the plaintiffs don't even allege what their jobs were. They say some of them were involved in wildland firefighting, but they're studiously vague about what their particular jobs were. And our does a lot of different things, including managing all of the forest lands of the state for the benefit of the educational system. Very true. And but so I do want to clarify that simply saying, well, we weren't on site. The plaintiffs say we didn't have to be on site to do our jobs, which in theory could be true of a wildland firefighter because they're off fighting fires. But that's not true of contractors because Proclamation 21 14.2. This was adopted in September of 2021. It defines what contractors, what on site contractors are specifically for DNR. So while DNR employees weren't covered by the proclamation, DNR contractors were and they make very clear that you are subject to the mandate if you are reasonably likely or contractually obligated to engage in or in fact engage in work while physically present at a building, a facility, a job site like a wildland firefighting mission, a unit or any other defined area owned, leased, occupied or controlled. That's how you would distinguish this case from bacon. Exactly. There's no allegation. Bacon was very specific in the allegations where they said we are firefighters and our exact jobs are being done by unvaccinated firefighters and neighboring jurisdictions in our city. And that in the court's ruling destroyed the general applicability. Another reason bacon doesn't apply. I'm going to come back with another date. Qualified immunity. Bacon was decided in 2024 after the proclamations were rescinded after these decisions were made. So no official could have had the benefit of bacon in understanding whether their conduct violated a constitutional right. And, you know, my friend on the other side said that case doesn't have to be factually on all fours. But again, Zorn says that the relevant precedent must define the right with a high degree of specificity such that every reasonable official would interpret it to apply. So if the court again rules on sovereign on qualified immunity, it does bring in the question of whether ex parte young relief is available. And I think the easiest way to answer that is to say that it is not available because as the district court held and we we argued below and we've argued in our briefs, the continuing the ongoing violation requirement of ex parte young is not present here. Plaintiffs, as my friend conceded today, that is not something that they have considered, despite it being the holding of the district court and briefed by us. So I think the simplest thing to do here, as well as in the next case, is to say that that argument has simply been abandoned or waived. They have not meaningfully engaged with the principle of the ongoing violation requirement of ex parte young. So the court really need not kind of go out there and cut and formally hold that ex parte young relief is never available under these circumstances. It just says the plaintiffs haven't presented any coherent argument to rebut that. The one the last thing I want to return to is, Judge Nelson, you raised in the previous argument that these cases are on a motion to dismiss, which may make it more challenging than, for example, some of the preliminary injunction holdings in the free exercise context, like San Diego Unified School District. And that's true. But really, it's a legal principle. And so even San Diego Unified School District was was the motions panel, but it's a published opinion. And even yes, Doe v. San Diego. I thought Doe was on a preliminary posture and they specifically said this isn't binding. Well, they say it's not binding on the merits panel in this case, just like any other preliminary injunction holding would not be binding for an adjudication of summary judgment. It's a look. It's a preview. But as East Bay Sanctuary v. Trump says a published opinion by emotions panel is binding on matters of law. And I think, Judge Nelson, you repeated that in your concurrence and Oregon v. Trump. And so so you look at is there a legal holding? Is there a principle of law that Doe invokes? And there is. And that is that medical exemptions and religious exemptions are not comparable because they don't present. They don't undermine the government's interests in the same way. And other circuits, including the Second Circuit, have reached that principle on motions to dismiss. Well, I tend to agree with you, except I'm not it's I almost view that as a little bit of a mixed question of fact and law, because I don't it's so easy to say, hey, you just can't compare the two. I think it's the reasons that support them. Now, here it tends to be the same reasons that it's the health and safety reasons are what support it. So there could be a case where the government doesn't invoke an interest of protecting its employees. It invokes some other interest. But I guess I so I was thinking, why shouldn't they be given a chance to amend their complaint in light of bacon? You're saying, number one, because we're legally distinguishable. And so I guess it's really a futility argument that you're making on that, that they can't say they can't make these allegations. They're saying. But I hadn't really thought about if we were to if they were to get qualified immunity. Then it doesn't matter. Why would we why would we allow them to amend? Maybe this is something for rebuttal. Should they be given the chance to amend for the underlying constitutional violation if we're just going to say, well, there's no there's qualified immunity here. And I guess I guess that revels into the continuing violation. Exactly. And our position is that they should not be given the opportunity to gravy washed out. It was a mem dispo, but they basically reached the same conclusion that there was no chance of sort of resuscitating the procedural due process claim because qualified immunity barred it again on the motion to dismiss point, though, I think the Second Circuit's case, a decision in Connecticut Office of Early Childhood Development, We the Patriots, the Connecticut office is which is on a motion to dismiss posture. It's a really comprehensive treatment and explanation of why the medical versus religious exemption doctrine is a matter of law, especially in a case where the interest is they're protecting the health of students, which is we the Patriots, the Connecticut Office of Early Childhood Development. It is in our briefs, a case not in our briefs, which was issued earlier last month, I believe. And we didn't want to bombard you too much with the flurry of 28 letters. But it's a great decision by Judge Wilkinson of the Fourth Circuit. It's called Perry v. Martini, 172 Federal 4th 315. And that upholds West Virginia's student vaccination requirement, even though it has no religious exemption whatsoever, but it does have a medical exemption. And Judge Wilkinson does a great job, in my opinion, of the only the only issue I have is I don't necessarily disagree with you when it comes to the difference, the discrimination point between religious and secular. But that's not what Bacon relied on. Bacon didn't rely on on those differences. Bacon just said this doesn't make sense in the context of this. And so that's what I'm that that's the argument I'm grappling with is why why shouldn't they be given the chance to amend? You've given some reasons why they shouldn't. And I think I explain why the contractor allegations here just aren't equivalent to Bacon. And plaintiffs haven't said that they would like to amend to just to make closer allegations to Bacon. But again, the qualified immunity really poses an insuperable bar here. The reason I was hammering the kind of legal distinction between medical and religious is it goes to a point Judge Tallman made, I believe, that this record does not contain an indication that there were way more medical excuse me, exemption requests than medical exemption requests. This was the last of the case file. And I think plaintiffs may have kind of learned from previous example and omitted that data from their complaint. So but the court need not rely on that numerical difference because there's this principal difference between medical and religious exemptions where medical exemptions do serve the state's interest in protecting employee health, where religious exemption doesn't. For those We'll give you a minute for rebuttal. Thank you, Your Honor. To counsel's point, I don't believe we're conceding the ongoing violation issue. My comment to Judge Clifton was that that sequencing was something that I not fully considered, not that we were fully abandoned that claim. I want to be. But how do you get around the fact that the proclamations in whatever form, whether governor or secretary or commissioner level, had been rescinded before the lawsuit got filed? What would you allege if we allowed you to amend your complaint that would fill that gap? That the impact still remains, that the they remain terminated and the termination occurred by the way that was applied. In the absence of a policy, they're not prohibited from reapplying to the agency for reemployment, are they? Well, reemployment would not restore the status quo. But you would record the status quo as of the date the complaint was filed, maybe not something that happened a year and a half before, but that's a damages claim. And that ex parte young doesn't help you at all with the damages claim. It's all about prospective injunctive relief. Reinstate. Right. And reinstatement is different than rehire. Even if you assume it's to the same position, there's still an injury where there's a loss of seniority and other benefits. And that's all a damage claim. You got the job. Now you want to claim you should be paid more or paid for the time you were off. But that's not prospective injunctive relief. I think that the the restoration to those positions is separate from a damages claim of back pay. But that that assumes that you have a constitutional right to continued employment. And I don't think any case says that with regard to any of these jobs. I would agree, Your Honor, there is not an absolute constitutional right to continued public employment. There is a right to continue. There is a right to due process in the context of public employment, which our cases have discussed and rejected in the context of due process challenges to these terminations. Our cases have said that the proclamations contain sufficient notice and an opportunity to be heard and a warning that if you didn't accept the vaccine, you would be terminated. And end of the due process claim. But where does we're still struggling with what have you got in the face of the continuing violations, doctor? And our allegations are that these individuals continue to remain terminated when they should be reinstated where there was a violation, in our view, among others of their free exercise rights. And I think this does go to Judge Nelson's point about amendment. Well, let's address that because I think there's two two concerns. Number one, if if they're entitled to qualified immunity, then what good does it do to amend for the constitutional violation? I believe that would leave the perspective, injunctive belief issue that we've been discussing, your honor. And then the second is the legal hurdle that they were pointing out. There's a legal difference in this case. With Bacon, so they're just saying you basically they're making the it's a futile attempt to to to plead around it because here the facts are just different than Bacon on who was being hired. So to the contractor point. I actually think it's analogous to Bacon, to the extent contractors for DNRs, specifically on site contractors or otherwise, that matter, are subject to. A proclamation, whether it's the governor's or DNR's own policy, that's actually analogous to Bacon, because in Bacon, the outlying county fire districts, the neighboring city, Spokane Valley, were all under the same proclamation as that was the difference. They were bacon. They weren't. So what was happening was unvaccinated. They were terminating employees for not getting vaccinated. And then they were bringing in contractors from other counties who also weren't unvaccinated. That was that was the facts. Scenario in Bacon. And that's why the as applied versus facial distinction is so important. But even as applied, if if the if what Mr. Pakala said is correct, the DNR policy applied to contractors. So doesn't that distinguish it from the facts of Bacon? It depends on how it was applied to those contractors, because the fact that the proclamation brought those individuals within their ambit is not necessarily that it rolls back into your free exercise claim that accommodation could have been treated differently by different entities. So they could be bringing. I don't know. You tell me. Certainly, your honor. So the fact that in a contracting entity or a neighboring county or whatever other entity is covered by, for example, former Governor Inslee's proclamation, the proclamation itself on its face required exemption accommodation. So if it's known that the neighbor is accommodating all of their workers, then your termination of your people and creating the vacuum. I mean, could if we allowed you to amend, is that even something you could amend and and allege? I think we could, your honor, particularly in this case. My recollection is that there were comments by Commissioner France specifically with related to federal woodland firefighters and her frustration on the vaccine mandates. They're not being as strictly enforced as they were, as she wished them to be with DNR. So I think there is some daylight there, your honor, where we would then have a very similar situation to bacon. And it doesn't it just happens that that's with fire services in this case. So it's easy to see the analogy. But the same holds true for any services. Those are not between paid contractors and mutual aid responses. In other words, the city of Spokane was not paying the city of Spokane Valley, as far as I could tell from the record, maybe Judge Nelson knows, wasn't paying them if they sent fire engines under a mutual aid request because they needed more resources. I think that is a factual distinction. But when we look, I think the analysis that the court needs to take, though, is the impact or rather the risk of undermining the government's stated compelling interest. So I don't think who pays person X, Y or Z, I don't think is the dispositive question, nor is can I as the secretary or commissioner control X, Y or Z's is the dispositive question. It's am I allowing people to engage with my entity in a way that undermines the stated compelling government interest while I'm not providing that same? It's not an accommodation in this case, but that same leeway. Again, we're talking about what's the lowest common denominator problem I raised before, which is that Washington can't decide until Idaho decides and Idaho can't decide until Washington decides or Oregon decides or the federal government decides. And nobody really knows what the future holds at the time in question. So, I mean, you're telling me, well, because they need to have somebody to fight the fire and may have to call upon somebody who hasn't adhered to the same standards. So you can't set standards in the first place. That seems like an impossible situation. What kind of, what kind of, I mean, leaving aside qualified immunity, which no way we can say that it was clear that they had to succumb to the lowest common denominator. I don't know how any government can operate if you can't respond to emergencies by calling upon whatever resources you can, but you can't make decisions earlier on the off chance that Idaho isn't going to apply the same standards. Where's the constitutional violation in that? There's a risk of under-inclusiveness. Sure, there's a risk. There's always a risk, but that's the problem. There's a risk, but that doesn't mean you're acting in a way that discriminates. You're doing the best you can with the information you have at the time, not knowing what the neighboring state might decide to do. So are you paralyzed because the neighboring state might not be as strict as you are? You're suggesting that's under-inclusion, so yeah, that's a constitutional violation. I don't see it. I don't think that the governmental agencies are paralyzed by it behooving them to communicate between themselves when they're facing the same compelling government interests. In fact, I think- And if Idaho says, nope, we're going to let anything go, that means Washington is compelled to do the same thing. It should factor into Washington's analysis of whether or not they are, in fact, using the least restrictive means by looking at what a similar situated jurisdiction is doing. A couple other points, if I may, Your Honor. We did not tactically omit any data with regard to DNR here. OFM published data for every single, well, not every single agency, because not DNR. I believe we just didn't have that data. Otherwise, we would have included it and it may have impacted. We've let you go well over, so no, we'll go ahead and- Thank you, Your Honor. And close it out. Thank you. Thank you, again, for a well-argued case. And that case is now submitted.
judges: TALLMAN, CLIFTON, NELSON